Sullivan J. ASKO, Jr.

v.

**Paul B. BARTLE, Individually and as Chairman of the Montgomery County Board of Commissioners, Rita C. Banning, individually and as a member of the Montgomery County Board of Commissioners, Montgomery County Board of Commissioners, and Montgomery County.**

Civ. A. No. 89–8218.

United States District Court,
E.D. Pennsylvania.

April 29, 1991.

Alan B. Epstein, Philadelphia, Pa., for plaintiff.

Hope A. Comisky, Dilworth, Paxson, Kalish & Kauffman, Philadelphia, Pa., for defendants.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

This action arose out of plaintiff Sullivan Asko's termination from public employment, which, he alleges, occurred in retaliation for his support of a political candidate and because of his age. Before the Court is the defendants' motion for summary judgment on Counts I, III, and V of the plaintiff's complaint. The motion will be granted in part.

Asko was the Recorder of Deeds for Montgomery County, Pennsylvania, from 1972 through 1983. In 1984, he became the Director of the Personal Property Department for the Montgomery County Board of Assessment Appeals. The Director, who is not elected, oversees the entire Personal Property Department, which is charged with billing and collecting taxes on non-exempt personal property held by County residents. In 1987, William Wentz, a longtime friend of the plaintiff's and the Chair of the Board of Assessment Appeals,

sought the Republican nomination for Chair of the County Board of Commissioners, an elective office. Paul Bartle, the incumbent, successfully resisted Wentz's bid. In October 1988, Bartle terminated Asko's employment. The Salary Board formally approved the action on January 12, 1989. The defendants maintain that Asko's position was eliminated under a restructuring plan. According to the plaintiff, however, soon after Bartle defeated Wentz at the Republican convention, Bartle fired Asko as part of a pattern of punitive measures taken against Wentz's supporters. The plaintiff claims that the termination also was the product of illegal age discrimination. Asko was sixty years old at the time of the separation and was replaced by persons younger than he.

■ In Count I of his complaint, the plaintiff alleges that he was fired because he exercised his first amendment rights of free speech and association in supporting Bartle's political rival, Wentz. The first amendment generally forbids a government employer from penalizing its employees for their expression of ideas on matters of public concern. *Pickering v. Board of Educ.*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 56–57 (1st Cir.1990). Courts also have recognized that the first amendment immunizes public employees from adverse employment action on the basis of their political affiliation, unless partisan fealty is an appropriate requirement for the position involved. *Rutan v. Republican Party of Ill.*, — U.S. —, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990); *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) (plurality opinion); *Rode v. Dellarciprete*, 845 F.2d 1195, 1204 (3d Cir.1988).

■ Not every relationship between individuals, however, implicates concerns warranting federal court scrutiny of the personnel determinations made by state employers. Employees who contend "that adverse employment action was taken against them based upon the exercise of their asso-ciation rights must show that they were engaged in constitutionally protected conduct, which conduct was a 'substantial' or 'motivating factor' in the government employer's decision." *Rode*, 845 F.2d at 1204 (quoting *Mt. Healthy City School District Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977)). *Accord Salvation Army v. New Jersey Dep't of Community Affairs*, 919 F.2d 183, 199 (3d Cir.1990) ("[T]here is no constitutional right to associate for a purpose that is not protected by the First Amendment."); *Ferrer v. Zayas*, 914 F.2d 309, 311 (1st Cir.1990); *United States v. Frame*, 885 F.2d 1119, 1131 (3d Cir.1989); *Trotman v. Board of Trustees*, 635 F.2d 216, 224–25 (3d Cir.1980), *cert. denied*, 451 U.S. 986, 101 S.Ct. 2320, 68 L.Ed.2d 844 (1981). As one Court of Appeals has phrased it, "Entry into the constitutional orbit requires more than a mere relationship.... [T]he first amendment does not protect against all deprivations arising out of an act of association unless the act itself—say, joining a church or political party, speaking out on matters of public interest, advocacy of reform—falls within the scope of activities eligible for inclusion within the constitutional tent." *Correa–Martinez*, 903 F.2d at 49 (quoted with approval in *Salvation Army*, 919 F.2d at 199).

■ There is no evidence to undergird the claim that Asko engaged in constitutionally significant activity, an issue upon which the plaintiff bears the burden of persuasion. Wentz was not aware that the plaintiff had done any campaigning or advocacy on his behalf.

A. ... I think Mr. Asko, who was then out of politics, certainly because of our friendship and working together, was supportive of me.

. . . . .

Q. Mr. Asko, what did he do, did he go out and actively campaign?

A. No, no. Again, you would have to ask Mr. Asko. He may have talked to some of his friends, previous friends from his political days that were committee people. But other than that, he did not actively and openly campaign for me.

Dep. of W.P. Wentz, Jr., Oct. 11, 1990, at 35, 36 (Def. Reply Mem., Ex. H). Asko himself stated, "Basically the problem is this: I was friendly with Mr. Wentz. I went to lunch with him. He was my supervisor or he was my boss. I did not politically campaign for Mr. Wentz. I did not have a vote for Mr. Wentz. I did not make any telephone calls on behalf of Mr. Wentz ..." Dep. of S.J. Asko, Jr., Sept. 10, 1990, at 33 (Def. Reply Mem., Ex. G).

Woefully absent from these recitations is the slightest indication that Asko and Wentz banded together for any political, ideological, or otherwise protected purpose, or that Asko espoused any political views. To the contrary, the plaintiff himself suggests that he avoided political involvement in the internecine conflict between Wentz and Bartle. *See Correa–Martinez,* 903 F.2d at 57. The deposition testimony before the Court demonstrates only that Bartle had political differences with Wentz and that, as a result, Bartle retaliated against Asko because of his friendship and professional association with Wentz. That form of discrimination, assuming it existed, may be reprehensible, but it does not impair a constitutional right. "Merely juxtaposing a protected characteristic—someone else's politics—with the fact that plaintiff was treated unfairly is not enough to state a constitutional claim." *Id.; see also Rode,* 845 F.2d at 1204–05; *Bundren v. Peters,* 732 F.Supp. 1486, 1499 (E.D.Tenn.1989).

Although Wentz speculated in his deposition that Asko "may have" spoken to some "committee people," Asko can derive no solace from this statement. First, Wentz's impression plainly does not stem from his own personal knowledge and must be disregarded. *See* Fed.R.Civ.P. 56(e); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986) (If the evidence submitted "is merely colorable, or is not significantly probative, summary judgment may be granted."); *Hlinka v. Bethlehem Steel Corp.,* 863 F.2d 279, 282–83 (3d Cir.1988); *Bushman v. Halm,* 798 F.2d 651, 660 (3d Cir.1986); *Maldonado v. Ramirez,* 757 F.2d 48, 51 (3d Cir.1985). Second, even if the Court were to consider it, the testimony fails to establish that the communication involved the expression of ideas covered by the free speech clause. Nor is the proof that Asko was "supportive" of Wentz sufficient. Appending that label to their relationship does not warrant an inference that the association contained any political or other constitutionally significant dimension. Additionally, under Fed.R.Civ.P. 56(e), courts are not at liberty to assume that conclusory assertions embrace the specific facts necessary to sustain a cause of action. *Lujan v. National Wildlife Federation,* —— U.S. ——, ——, 110 S.Ct. 3177, 3188–89, 111 L.Ed.2d 695 (1990); *Schoch v. First Fidelity Bancorporation,* 912 F.2d 654, 657 (3d Cir.1990); *Maldonado,* 757 F.2d at 51. Because the statement is without any foundation in the particular facts of record, it cannot assist the plaintiff in avoiding the entry of summary judgment against him.

 In Count III, Asko alleges that his termination was contrary to the dictates of the Age Discrimination in Employment Act of 1967 (ADEA). 29 U.S.C. § 621 *et seq.* The ADEA prohibits an employer from discriminating against an employee on the basis of age "with respect to ... compensation, terms, conditions, or privileges of employment." 29 U.S.C. § 623(a). Yet, under the statutory definition of "employee," the ADEA does not extend to:

> any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policymaking level or an immediate advisor with respect to the exercise of the constitutional or legal powers of office.

29 U.S.C. § 630(f). The defendants posit, among other things, that because Asko was "an appointee on the policymaking level," he is not entitled to invoke the protections of the Act. The Court cannot agree. It may be true that Asko was a policymaker within the meaning of the ADEA, but the evidence suggests he was not an "appointee." *See EEOC v. New York,* 907 F.2d 316, 321 (2d Cir.1990); *EEOC v. Ver-*

*mont,* 904 F.2d 794, 800 (2d Cir.1990); *Gregory v. Ashcroft,* 898 F.2d 598, 604 (8th Cir.1990); *Stillians v. Iowa,* 843 F.2d 276, 279 (8th Cir.1988). Nowhere do the defendants explain their contrary position. Further, the Court, reading the record as a whole, concludes that Asko has marshalled sufficient proof to establish a prima facie case of age discrimination and that there are genuine issues of material fact. *See generally Spangle v. Valley Forge Sewer Auth.,* 839 F.2d 171, 173 (3d Cir.1988). The parties will proceed to trial on Count III.

■ Last, in Count V of his complaint, Asko alleges the state tort of wrongful discharge. Pennsylvania generally has adhered the doctrine of employment at-will. Accordingly, "absent a contract, employees may be discharged at any time, for any reason, or for no reason at all." *Martin v. Capital Cities Media, Inc.,* 354 Pa.Super. 199, 207, 511 A.2d 830, 834 (1986), *allocatur denied,* 514 Pa. 643, 523 A.2d 1132 (1987). This precept "reflects the belief that the intimacy of the master-servant relationship and the need for managerial discretion defy judicial scrutiny." *Clay v. Advanced Computer Applications, Inc.,* 370 Pa.Super. 497, 510, 536 A.2d 1375, 1382 (1988) (in banc), *rev'd on other grounds,* 522 Pa. 86, 559 A.2d 917 (1989). The rule is not without exceptions, however. The Third Circuit repeatedly has predicted that the Pennsylvania Supreme Court would recognize a tort of wrongful discharge "where the employment termination abridges a significant and recognized public policy." *Novosel v. Nationwide Ins. Co.,* 721 F.2d 894, 898 (3d Cir.1983). *Accord Bruffett v. Warner Communications, Inc.,* 692 F.2d 910 (3d Cir.1982); *Polsky v. Radio Shack,* 666 F.2d 824, 828 (3d Cir.1981). Phrased another way, a necessary condition for stating a wrongful discharge action is that the termination in question must offend a "clear mandate of public policy." *Geary v. United States Steel Corp.,* 456 Pa. 171, 184–85, 319 A.2d

174, 180 (1974). Courts have found the exception applicable in only a few situations. *See, e.g., Woodson v. AMF Leisureland Centers, Inc.,* 842 F.2d 699 (3d Cir. 1988) (discharge for refusal to serve intoxicated patron found violative of clear mandate of public policy); *Novosel, supra* (termination for refusal to engage in political lobbying); *Perks v. Firestone Tire & Rubber Co.,* 611 F.2d 1363 (3d Cir.1979) (refusal to submit to polygraph examination); *McNulty v. Borden, Inc.,* 474 F.Supp. 1111 (E.D.Pa.1979) (refusal to participate in antitrust violations).

■ The plaintiff's wrongful discharge claim consists of two parts.* First, he asserts that he was fired in retaliation for exercising free speech and association rights secured by the United States and Pennsylvania Constitutions, both of which are said to evince clear mandates of public policy. Although the plaintiff emphasizes his additional reliance on the state Constitution, he makes no effort to explain what pertinent interests are safeguarded by that document which are not shielded by the federal Constitution. Indeed, Asko himself treats the relevant provisions as coextensive: "The proofs underlying this claim have been laid out in the section of this argument dealing with the retaliation against Mr. Asko in his § 1983 claim." Pl. Response, Jan. 10, 1991, at 21. Because, as noted earlier, there is no evidence that Asko engaged in political or other protected activity, he may not invoke the rights to free speech and association to support his pendant claim of tortious discharge.

■ The second component of Asko's wrongful discharge action is predicated on the allegation that the defendants acted with the specific intent to harm him. In this respect, the plaintiff relies primarily on *Tourville v. Inter–Ocean Ins. Co.,* 353 Pa. Super. 53, 508 A.2d 1263 (1986), *allocatur denied,* 514 Pa. 619, 521 A.2d 933 (1987), in

---

* In resisting the defendants' motion to dismiss, the plaintiff had argued that Pennsylvania's Official Oppression Statute, 18 Pa.Cons.Stat.Ann. § 5301, constituted a clear mandate of public policy that was contravened by the separation. *Asko v. Bartle,* Civ. No. 89–8218, slip op., at 3–4,

1990 WL 67212 (E.D.Pa. May 14, 1990). Asko now rests his claim solely on the first amendment and the ostensible "specific intent to harm" exception. Accordingly, the contention that a tortious discharge action accrued from a violation of section 5301 has been waived.

which a panel of the Superior Court held that an adverse employment decision, if transacted with the specific intent to harm the employee, can comprise a state law tort. The Supreme Court of Pennsylvania, however, has never approved of this formulation and recently has given every indication that it would reject it. "Exceptions to th[e] rule" that an at-will employee may be terminated with or without cause "have been recognized in only the most limited of circumstances, where discharges of at-will employees would threaten clear mandates of public policy." *Paul v. Lankenau Hosp.*, 524 Pa. 90, 95, 569 A.2d 346, 348 (1990) (quoting *Clay v. Advanced Computer Applications*, 522 Pa. 86, 89, 559 A.2d 917, 918 (1989)); *see also Schoch*, 912 F.2d at 658; *Mann v. J.E. Baker Co.*, 733 F.Supp. 885, 890 (M.D.Pa.1990); *McWilliams v. AT & T Info. Sys., Inc.*, 728 F.Supp. 1186, 1194 (W.D.Pa.1990) (Pennsylvania Supreme Court has "permit[ted] only a public policy exception to the at-will doctrine."); *Pociask v. KDI Sylvan Pools, Inc.*, Civ. No. 89–3447, slip op., 1990 WL 161256 (E.D.Pa. Oct. 17, 1990) (noting serious doubts about existence of specific intent to harm exception). These developments, in conjunction with Pennsylvania's long preservation of the at-will rule and the judiciary's refusal to discern violations of public policy in all but a few cases (which clearly signals a reticence to interpose itself into the employer-employee relationship unless Congress or the state legislature has commanded otherwise), dictate the conclusion that in Pennsylvania there is no commonlaw tort for wrongful discharge based on an employer's specific intent to harm. *Yetter v. Ward Trucking Corp.*, 401 Pa.Super. 467, ——, 585 A.2d 1022, 1025–27 (1991) (holding allegation of specific intent to harm fails to state cause of action for wrongful discharge under Pennsylvania law). Judgment will be entered against the plaintiff on Count V.

**ISLAND PERIODICALS, INC., Plaintiff,**