Charles CHRISTY

v.

PENNSYLVANIA TURNPIKE COMMIS-
SION, Robert Brady, James L. Dodaro,
Howard Yerusalim, Frank A. Ursomar-
so, James F. Malone, III, John L. Sokol,
Jr., S. Michael Palermo, Joseph L. Di-
rienzo, Samuel S. Carnabuci, Melvin M.
Shelton, Deborah Koval, John A. Boschi,
Vincent J. Greco, John A. Stewart,
George Pilecki and Sean Pilecki.

Civ. A. No. 93–CV–3346.

United States District Court,
E.D. Pennsylvania.

Nov. 6, 1995.

On reconsideration —— F.Supp. ——.
See also, 157 F.R.D. 338.

John P. Hickey, Imogene E. Hughes, Kleinbard, Bell & Brecker, Philadelphia, PA, for Plaintiff.

Michael M. Baylson, Frank E. Noyes, II, Duane, Morris & Heckscher, Philadelphia, PA, for Defendants (except Boschi).

David S. Fortney, Lisa G. DiPietro, Reed, Smith, Shaw & McClay, Philadelphia, PA, for Defendant—John Boschi.

## MEMORANDUM

JOYNER, District Judge.

Before this Court is each Defendant's Motion for Summary Judgment against Plaintiff, Charles Christy.[1] In 1994, this Court denied

---

1. Defendants are John Boschi, who is represented separately, and the Pennsylvania Turnpike Commission (PTC), Robert Brady, James L. Dodaro, Howard Yerusalim, Frank A. Ursomarso, James F. Malone, III, John L. Sokol, Jr., S. Michael Palermo, Joseph L. Dirienzo, Samuel S. Carnabuci, Melvin M. Shelton, Deborah Koval, Vincent J. Greco, John A. Stewart, George Pilecki and Sean Pilecki.

The individual Defendants are all present or former employees of the PTC in positions ranging from Commissioner to Personnel Committee

the original Defendants, the Pennsylvania Turnpike Commission, Brady, Boschi, Greco and Stewart's Motion for Summary Judgment. 845 F.Supp. 1097. This ruling was affirmed on interlocutory appeal by the Third Circuit in 1995 and certiorari denied by the United States Supreme Court. 54 F.3d 1140. Now, after almost 2,000 pages of evidence and over 300 pages of briefing submitted to this Court, these Motions are ready to be resolved.[2]

The nutshell version of Christy's Amended Complaint is that he is an employee of the Pennsylvania Turnpike Commission (PTC). In early 1993, Christy applied to be promoted from Mechanic to Foreman of the Line Painting Crew. Another PTC employee named Sean Pilecki received the promotion instead of Christy. After the original complaint in this action was filed, Christy applied for and was denied a promotion to Regional Fleet Equipment Manager–East. He lost that promotion to a PTC employee named Frank Dunn and subsequently amended his complaint to reflect this occurrence.

Christy alleges that he would have received both promotions if it were not for the fact that Pilecki and Dunn were politically sponsored employees. Christy alleges that political patronage promotions are endemic at the PTC and that this practice violates his First Amendment right to be free to politically associate or not politically associate as he chooses.

**Standard of Review**

In considering a motion for summary judgment, a court must consider whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue of material fact, and whether the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court must determine whether the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

In making this determination, all of the facts must be viewed in the light most favorable to the non-moving party and all reasonable inferences must be drawn in favor of the non-moving party. *Id.* at 256, 106 S.Ct. at 2514. Once the moving party has met the initial burden of demonstrating the absence of a genuine issue of material fact, the non-moving party must establish the existence of each element of its case. *J.F. Feeser, Inc. v. Serv–A–Portion, Inc.,* 909 F.2d 1524, 1531 (3d Cir.1990), *cert. denied,* 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991) (*citing Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)).

**Discussion**

Joint Defendants contend that summary judgment should be granted for two reasons; first, that they are entitled to judgment as a matter of law; second, that they are entitled to qualified immunity from suit.

*1. First Amendment*

Christy brings his First Amendment claims under the Supreme Court's ruling in *Rutan v. Republican Party,* 497 U.S. 62, 64, 110 S.Ct. 2729, 2731, 111 L.Ed.2d 52 (1990). This case ruled that public agencies cannot promote public employees based on their political affiliations unless the employee's work requires political allegiance. *Id.; Robertson v. Fiore,* 62 F.3d 596, 599 (3d Cir.1995). *Rutan* was simply an extension of the standards laid down in *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) and *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), which prohibited political discrimination in hiring, transferring and discharging public employees.

■ To apply *Rutan,* we ask whether (1) the employee works for a public agency in a position that does not require political allegiance, (2) the employee maintained an affiliation with a political party and (3) the employee's political affiliation was a substantial

---

Member to Road Line Painter. The Defendants other than Boschi are jointly represented. We will refer to all Defendants but Boschi as "PTC Defendants" and all Defendants as "Joint Defendants."

**2.** We find that the record is sufficient for us to make our decision and deny Joint Defendants' request for oral argument on these motions.

or motivating factor in the adverse employment decision. *Robertson,* 62 F.3d at 599 (citing cases). If an employee can show those three elements, the burden shifts to the employer to show that it would have made the same employment decision anyway. *Id.* If the employer cannot make that showing, then the employee is entitled to a verdict in his or her favor.

■ Joint Defendants concede that Christy meets the first point because neither of the positions he applied for require political allegiance. They do, however, contest the second two elements and also argue that there were legitimate reasons for not promoting Christy.

■ The first issue for us, then, is whether Christy had a political affiliation.[3] Christy asserts that he remained politically neutral in the work-place and therefore did not receive the political support he needed.[4] PTC Defendants argue that an affiliation with a political party is necessary. Since Christy denies a work-place affiliation, they assert he cannot meet this second element, and summary judgment must be granted.

We do not read *Robertson* so narrowly. The point of *Rutan* is to prevent on-the-job coercion to align oneself politically. 497 U.S. at 76, 110 S.Ct. at 2738. The right not to politically associate is as protected as the right to associate. *Id.; Bennis v. Gable,* 823 F.2d 723, 731 (3d Cir.1987). Christy alleges that he was not promoted because he refused to curry political favor with people such as Commissioner Brady who could ensure his promotion and that others were promoted because they did curry such favor. We find

that if proven, this could state a claim under *Rutan.*

■ PTC Defendants also argue that Christy cannot assert that he was politically neutral because he listed political activities on his resume. Christy maintains that he was not political within the work-place and did not affiliate himself politically with the right people. We find that this allegation is not inconsistent with his political activities outside of work with people other than those in power at the PTC.

Given the above, we turn to *Robertson's* final element, whether Christy's political affiliation or non-affiliation was a substantial or motivating element in the PTC's employment decisions. To fully understand Christy's contentions, an understanding of the PTC's promotion process is necessary.

Promotions in the PTC are governed by Policy Letter 65. This Policy Letter was issued in response to *Rutan* and is intended to guarantee merit promotions. Policy Letter 65 requires the following for making promotions. First, candidates must be solicited from the district where the opening is by posting the job description for ten days. The PTC's Human Resources Department forwards all applications to the appropriate Manager. The Manager, together with the appropriate Deputy Executive Director, selects three to six candidates to forward to the Personnel Committee.

Here, Boschi chose three candidates for each position after first selecting a team of Interviewers to interview the applicants. The interviewers were Boschi, Greco and Stewart for the Paint Crew Foreman position and Stewart and non-defendants Mike

---

3. It is established that an employee can show a protected political affiliation even if he or she is a member of the same political party as his or her employer so long as the employer and employee are members of competing identifiable factions within that same party. *Robertson,* 62 F.3d at 600.

4. According to PTC Defendants, Christy has gone through three completely different theories of his case. They assert that in his original complaint, he argued that Pilecki was promoted to Paint Crew Foreman due to political favoritism for Pilecki. Then, in response to the original Defendants' motion for summary judgment, he argued

that he was discriminated against because he belonged to an alleged Chester County faction of the Democratic Party, whereas Commissioner Brady belonged to the alleged Philadelphia County faction of that party. Now, Christy alleges that he was discriminated against because he remained politically neutral at work. We do not see as much of a difference between these theories as PTC Defendants do because they all, at base, assert that Pilecki and Dunn had political pull and therefore received promotions, whereas Christy had no pull and was not promoted. Moreover, we will not penalize a plaintiff for refining a theory over time.

McClurkin and Jack Doyle, for the Regional Manager position. The interviewers gave number scores to each candidate for a number of categories such as computer knowledge and supervisory experience. Boschi identified the top three scorers, summarized their interview evaluations in a Recommendation Memo and forwarded that Memo and supporting documents such as the three candidates' applications (jointly, Personnel Documents) to the Personnel Committee. According to Policy Letter 65, the Personnel Committee reviews the Personnel Documents and from them, chooses one candidate to recommend to the Commissioners for final approval. In practice, the Commission vote is a rubber-stamp approval, since the Commissioners vote on all personnel recommendations in a single vote together with all requisition and purchase order items.

Christy alleges that in his case, the initial paperwork was skewed so as to ensure that the politically supported candidate appeared to have the best credentials for the promotion. He presents evidence indicating that his interviews were sham, that he was never asked questions for which answers were provided on his evaluation sheets (such as whether he had computer or supervisor experience) and that he was more qualified for the promotions than either Pilecki or Dunn. Christy also presents evidence that each level above the interview level was aware that political patronage ensured promotions and that each person participated in that program.

Christy's evidence takes the form of his own affidavits and notes he made during the promotion process. One of Christy's affidavits states that soon after he was denied the promotion to Paint Crew Foreman, he asked Boschi for an explanation. According to Christy, Boschi told him that promotions were made on the basis of political patronage, that Sean Pilecki received the promotion because he was supported by Commissioner Brady, that without political support Christy would never be promoted and that he should align himself with Commissioner Brady or State Senator Vincent Fumo.

After this conversation, Christy transcribed what he remembered was said, and proffers these contemporaneous notes to support his affidavit. Indeed, Boschi agreed in his deposition that he and Christy had this conversation, although he remembers its contents differently. For example, Boschi testified that he merely speculated to Christy that political patronage ensured Pilecki's promotion, not that it was the actual reason for the employment decision.

Further, Christy proffers an affidavit from Louis Sperluti, a former supervisor of both Christy and Pilecki. Sperluti avers that Boschi told him that Frank Dunn received his promotion because Dunn had the support of State Senator Mello and that Pilecki told him that he received his promotion because his father pulled political connections for him. In addition, Sperluti avers that Pilecki's father told him that he was using political connections to get his son the promotion. Finally, Sperluti testified that he overheard Christy and Boschi's conversation and supports Christy's memory of its contents.

It is easiest to present the Joint Defendants' evidence by simply stating that they vigorously deny each of Christy's allegations and, in fact, present evidence that flatly contradicts much, if not all of it. They present affidavits and deposition testimony of each Defendant averring that none has personally participated in political patronage promotions nor is aware of any other PTC employee or officer participating in political patronage promotions.

Joint Defendants also make legal arguments why summary judgment should be granted. First, they assert that Christy's evidence consists solely of speculation, rumor, hearsay and innuendo and therefore is inadequate to withstand a motion for summary judgment. They compare Christy's evidence to that presented in *Liotta v. Borough of Springdale*, 985 F.2d 119, 122 (3d Cir. 1993). There, the plaintiff presented three affidavits, two of which simply stated that the affiants "believe that [plaintiff] was terminated due to political reasons." The third did not say much more. The Third Circuit held that a person's "belief" of the cause of a termination is mere speculation and is therefore insufficient to withstand a motion for summary judgment. *Id.*

Second, Joint Defendants contest whether Christy has demonstrated causation between his political affiliation and the PTC's employment decisions. They attribute any behind-the-scenes maneuvering that may have taken place to family or friendship loyalty and nothing more. According to Joint Defendants, Christy asserts that the First Amendment is violated every time an elected or otherwise influential person acts as a reference for a friend or former employee. Further, Joint Defendants challenge whether several Defendants, namely the Commissioners, were aware of Christy's political affiliation or even knew him, Pilecki or Dunn. *Laskaris v. Thornburgh*, 733 F.2d 260, 265 (3d Cir.), *cert. denied*, 469 U.S. 886, 105 S.Ct. 260, 83 L.Ed.2d 196 (1984) (summary judgment when no evidence that defendants aware of plaintiff's political affiliation); *Cusson–Cobb v. O'Lessker*, 953 F.2d 1079, 1081 (7th Cir.1992) (same); *McMillian v. Svetanoff*, 878 F.2d 186 (7th Cir.1989) (simply possessing different political beliefs than employer does not create First Amendment claim); *Corrigan v. Rhode Island Dep't of Business Reg.*, 820 F.Supp. 647, 663–64 (D.R.I.1993) (no allegation or evidence that plaintiff's politics caused lack of sponsorship).

Related to the above argument, PTC Defendants contend that at most, Christy's evidence only shows basic favoritism for particular employees. This, they assert, does not violate the Constitution. They cite *Asko v. Bartle*, 762 F.Supp. 1229 (E.D.Pa.1991), where our Court held that an employer may legally discharge friends of political rivals because friendship is not an association protected by the First Amendment. *Id.* at 1231. *See also Boger v. Wayne County*, 950 F.2d 316, 323 (6th Cir.1991) (same); *Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49 (1st Cir.1990) (same); *Green v. City of Montgomery*, 792 F.Supp. 1238 (M.D Ala.1992) (favor-

itism for a former assistant acceptable to Constitution).

Fourth, Joint Defendants argue that mere "involvement" in adverse employment issues is insufficient to state a claim for First Amendment rights violations. They contend that Boschi, Greco and Stewart recommended Christy and two others for the Paint Crew Foreman position and that this cannot be construed as an adverse employment action. Similarly, PTC Defendants contend that there is evidence that the Personnel Committee members and the Commissioners were not even aware that Christy was interested in the Regional Fleet Manager–East position because he was not one of the three final candidates and therefore, his name was not on the Recommendation Memo.

Finally, the PTC Defendants argue that summary judgment is appropriate because regardless of Christy's showing, he would not have been promoted anyway due to the other employees' higher qualifications as demonstrated by the Personnel Documents.

■ We find that taking Christy's evidence as true and making reasonable inferences in his favor, Christy has demonstrated the existence of genuine issues of material fact. He has proffered evidence from Sperluti and himself that according to Boschi, he did not receive the promotions because he was not politically connected and that the decisions to promote Pilecki and Dunn were made by either the Personnel Committee or the Commissioners.

Although no party frames the issue this way, it appears that Christy's claim is one for reverse discrimination. He alleges that other people were promoted over him and his better qualifications merely because he did not have political support and they did. When Christy's claim is viewed in this light, Joint Defendants' arguments become less persuasive.[5] We analogize Christy's claim to *Bennis*, where the Third Circuit permitted

---

5. We take this opportunity to recognize that many of Defendants' arguments rebutting many of Christy's arguments and evidence are persuasive. We do not address these, however, because they do not affect our finding that there are legitimate disputes that make this case one for a jury.

For example, from the record today it appears that Christy's evidence about the PTC's pre-*Ru-*

*tan* promotion practices are irrelevant to this post-*Rutan* claim, as are the pre-*Rutan* employment audits. Similarly, we disregarded all Christy's evidence as to the political nature of entry-level hiring at the PTC because of the dramatically different systems provided for in Policy Letter 65 (promotions) and Policy Letter 66 (hiring). Notably, it appears that Policy Letter 66 specifically allows for political influence. Be-

the apolitical plaintiffs to go to trial because, although there was no political animosity against them personally, they were demoted to make room for political supporters. 823 F.2d at 731.

First, we find that although much of Christy's evidence is speculative, enough of it is not, and it is that evidence upon which we rely. For example, Boschi allegedly told Christy that he did need the support of either Brady or Senator Fumo or he would not be promoted. Further, Boschi allegedly told Christy and Sperluti that Pilecki and Dunn did have political support from Brady and Senator Mello. These affirmative statements are a far cry from the speculative "I believe plaintiff was discharged for political reasons," statements in *Liotta,* 985 F.2d at 122.

Second, we find that Christy has presented adequate evidence to demonstrate causation. Boschi's alleged statements that Pilecki and Dunn had political support is sufficient to create at least a question of fact as to what kind of support they actually had (if any); political or friendship. If it is political, then Christy has made out a First Amendment claim.

Joint Defendants' strongest argument for a summary judgment is their third, based on the Rhode Island case of *Corrigan,* 820 F.Supp. at 664. There, the Court held that plaintiff did not demonstrate an illegal political sponsorship situation when the plaintiff failed to allege that "his politics, his ideology, or his advocacy of political goals led to his downfall." *Id.* Rather, the Court found that any sponsorship plaintiff's co-worker received was due to family loyalty and that nothing in the record suggested that plaintiff "could have attained sponsorship by altering his political beliefs or affiliations." *Id.*

PTC Defendants have argued that Christy has not alleged that "his politics, his ideology, or his advocacy of political goals led to his downfall." However, we find that there is some evidence to indicate that Christy's lack of sponsorship was politically related. Notably, Boschi's alleged statements that Christy should align himself with Brady or Senator Fumo indicate that Christy could have "attained sponsorship by altering his political beliefs or affiliations." For this reason, we find an issue of fact as to whether Christy's apolitical affiliation prejudiced him.

Joint Defendants' fourth argument, that mere involvement in an adverse employment decision does not state a claim, disregards Christy's contention that all Defendants actively participated in a plan to promote the candidate previously selected on the basis of political patronage. Further, their assertion that Boschi, Stewart and Greco aided Christy by placing him on the Paint Crew Foreman Recommendation Memo ignores Christy's evidence that they skewed that Memo to make Pilecki appear to have the best qualifications. We find that if Christy's version of the facts prevails at trial, then each Defendant participated in the employment decisions by either choosing the politically-sponsored employee, by acquiescing in the choosing of the politically-sponsored employee, by selecting the politically-sponsored employee for final Commission approval or by creating the Personnel Documents to support the selection of the politically-sponsored employee.

Finally, PTC Defendants' argument that the Personnel Documents dictated against promoting Christy anyway slights the fact that Christy has challenged the accuracy of the Personnel Documents. In fact, Christy alleges that they were purposely created to

cause of these allowed differences, our preliminary finding is that hiring practices have no relevance to the PTC's promotion practices.

Further, we agree with Defendants that much of Christy's pleadings do rely on insupportable leaps of logic. An example is the following passage, found at page 138 of Plaintiff's Response to these Motions (citations omitted).

Joann Zucker (Brady's secretary) had numerous telephone conversations with George Pilecki during the period of time that the Commission was considering his [son] Sean Pilecki's request to become Paint Crew Foreman. Joann Zucker stated that the discussions she

had with George Pilecki were limited to the summer months and concerned only the community picnic. Logic, however, dictates a different conclusion—that she was acting as a liaison between Brady and George Pilecki.

We agree with Defendants that this passage, and others like it, have no legal standing to create issues of material fact.

Recognizing that, however, does not remove the fact that Christy has presented cognizable evidence to support his assertions and it is on these facts that we rely to deny summary judgment.

make it appear as if Pilecki and Dunn were more qualified. If there is an issue of material fact as to the knowing inaccuracy of the Personnel Documents, then there is a genuine issue of material fact as to the PTC Defendants' knowing reliance on them. *Cf. Robertson,* 62 F.3d at 601 (legitimate reason to discharge when employee threatened lives of co-workers by smoking in highly flammable work-place).

For these reasons, we find that there are genuine issues of material fact as to Christy's claims.

### 2. Qualified Immunity

Joint Defendants assert that they are entitled to qualified immunity from Christy's claims. To determine whether a public employee is entitled to qualified immunity, courts ask whether the right alleged to have been violated was clearly established at the time of the alleged violation. If it was, then courts determine whether the defendant could reasonably have believed that his or her discretionary actions comported with that right. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Stoneking v. Bradford Area School Dist.,* 882 F.2d 720, 726 (3d Cir.1989), *cert. denied,* 493 U.S. 1044, 110 S.Ct. 840, 107 L.Ed.2d 835 (1990). Summary judgment in a defendant's favor is appropriate if there is evidence that a reasonable official *could* have believed that his or her actions were legal. *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Joint Defendants do not contest that Christy's First Amendment rights were clearly established at the time of the alleged violations. Our analysis, therefore, will focus on the second aspect of the above test.

Joint Defendants argue that summary judgment is appropriate because they followed the procedures established in Policy Letter 65. They argue that since they could reasonably have believed that Policy Letter 65's procedures defined the legal way to promote and because they did follow Policy Letter 65's procedure, they could reasonably have believed that they acted lawfully and are entitled to qualified immunity.

If Christy alleged procedural violations, this argument would succeed. Christy's lawsuit, however, alleges that although Joint Defendants may have comported with the administrative procedures in that they had the appropriate meetings and took the appropriate votes, in fact, these procedures were a smokescreen for the actual political patronage promotion process. For this reason, Joint Defendants' reliance on process does not answer whether they reasonably believed they acted legally.

Above, we concluded that the merits of Christy's claims were suitable for a trial. Here, we conclude that summary judgment is likewise inappropriate on the issue of qualified immunity. If Christy's allegations are true, then Joint Defendants knowingly used the procedures in Policy Letter 65 to effectuate political patronage, which was clearly proscribed at the time. *Rutan,* 497 U.S. 62, 110 S.Ct. 2729. No public official could reasonably have believed that such knowing circumvention was legal, and for this reason, we deny summary judgment.

An appropriate Order follows.

### ORDER

AND NOW, this 6th day of November, 1995, upon consideration of:

| Doc. # | Pleading |
| --- | --- |
| 130 | Motion by Defendants James L. Dodaro, Howard Yerusalim, Frank A. Ursomarso, James F. Malone, III, John L. Sokol, Jr., S. Michael Palermo, Joseph L. Dirienzo, Samuel S. Carnabuci, Melvin M. Shelton, Deborah Koval, George Pilecki and Sean Pilecki for Summary Judgment |
| 137 | Initial Response by Plaintiff Charles Christy to Motion for Summary Judgment |
| 141 | Response by Defendants to Plaintiff's Rule 56(f) Motion to Dismiss Defendants' Motion for Summary Judgment |
| 159 | Renewed Motion by Defendant John A. Boschi for Summary Judgment |
| 160 | Motion by Defendant Frank A. Ursomarso for Summary Judgment |
| 161 | Motion by Defendant Robert Brady for Summary Judgment |
| 162 | Motion by Defendant James J. Dodaro for Summary Judgment |
| 163 | Motion by Defendant Howard Yerusalim for Summary Judgment |
| 164 | Motion by Defendant Pennsylvania Turnpike Commission for Summary Judgment |
| 165 | Motion by Defendant James F. Malone III for Summary Judgment |
| 166 | Supplemental Memorandum by Defendants Pennsylvania Turnpike Commission, Robert Brady, James L. Dodaro, Howard Yerusalim, Frank A. Ursomarso, James F. Malone, III, John L. Sokol, Jr., S. Michael Palermo, Joseph L. Dirienzo, Samuel S. Carnabuci, Melvin M. Shelton, Deborah Koval, Vincent J. Greco, John A. Stewart, George Pilecki and Sean Pilecki in support of Motions for Summary Judgment |

167    Motion by Defendant Vincent J. Greco for Summary Judgment

168    Motion by Defendant George Pilecki for Summary Judgment

169    Motion by Defendant Sean Pilecki for Summary Judgment

170    Motion by Defendant John A. Stewart for Summary Judgment

171    Motion by Defendant Melvin M. Shelton for Summary Judgment

172    Motion by Defendant John L. Sokol, Jr. for Summary Judgment

173    Motion by Defendant S. Michael Palermo for Summary Judgment

174    Motion by Defendant Joseph L. DiRienzo for Summary Judgment

175    Motion by Defendant Samuel S. Carnabuci for Summary Judgment

176    Motion by Defendant Deborah Koval for Summary Judgment

183–4    Response by Plaintiff Charles Christy in opposition to Defendants' frivolous motion for Summary Judgment

190    Reply by Defendant John A. Boschi to Plaintiff's Response to Defendants' renewed Motion for Summary Judgment

191    Reply Memorandum by Defendants Pennsylvania Turnpike Commission, Robert Brady, James L. Dodaro, Howard Yerusalim, Frank A. Ursomarso, James F. Malone, III, John L. Sokol, Jr., S. Michael Palermo, Joseph L. Dirienzo, Samuel S. Carnabuci, Melvin M. Shelton, Deborah Koval, Vincent J. Greco, John A. Stewart, George Pilecki and Sean Pilecki in support of motion for Summary Judgment,

AND, in accordance with the attached Memorandum of Law, the Motions for Summary Judgment are hereby DENIED.