Joseph LIOTTA, Appellant

v.

BOROUGH OF SPRINGDALE, a municipality; Alvin Shoop, Jr., individually and as a member of the Borough of Springdale Council; John Molnar, individually and as a member of the Borough of Springdale Council; Rudolph Kubecka, individually and as a member of the Borough of Springdale Council; and Edward Sosovicka, individually and as a member of the Borough of Springdale Council.

No. 92–3424.

United States Court of Appeals, Third Circuit.

Submitted under Third Circuit Rule 12(6) Jan. 28, 1993.

Decided Feb. 9, 1993.

---

James V. Voss, Meyer, Unkovic & Scott, Pittsburgh, PA, for appellant.

James F. Israel, Israel & Wood, Pittsburgh, PA, for appellees.

BEFORE: GREENBERG and ROTH, Circuit Judges, and VanARTSDALEN, District Judge.*

## OPINION OF THE COURT

GREENBERG, Circuit Judge.

### I. BACKGROUND

Joseph Liotta appeals from an order entered on June 30, 1992, granting the appellees summary judgment in this action which he brought by reason of his termination as the borough administrator of Springdale Borough. The appellees are the borough itself, as well as Alvin Shoop, Jr., John Molnar, Rudolph Kubecka, and Edward Sosovicka, four members of the seven-person borough council.

The factual background and procedural history of the case are as follows. Liotta was involved in public affairs in Springdale Borough as an elected and appointed official for almost a decade starting in 1981, when he was elected to the borough council as a Democrat. A few years later he was reelected and from 1985 until 1987 he was president of the council. In June 1987 the borough enacted an ordinance creating the position of borough administrator. At that time the council passed a resolution providing that the administrator's term of office was to be four years. Furthermore, the council specified the terms and conditions of the administrator's employment and defined the duties of the position. In gener-

al, the administrator is to direct "all aspects of the public works functions of the Borough." When the council appointed Liotta as the first administrator, he resigned both from the council and from his private employment.

On March 15, 1989, Liotta was involved in the incident giving rise to this action. On that day, Liotta reported that he was sick and thus he did not come to work during regular business hours. However, when Shoop came to the borough hall during the early evening he encountered Liotta, who claims he was there to run an emergency generator. But Shoop asserts that the borough safe was open and the lockbox kept in it had been removed. Furthermore, Shoop claims that money was lying on a counter. At about the time of this encounter, the borough secretary, Burnette Coulter, found several cash shortages from the borough's funds totaling approximately $400. In particular, a cash count on March 16, 1989, revealed a shortage.

On March 30, 1989, the borough council held a hearing to determine whether to discipline Liotta. Liotta, Shoop, and Coulter, as well as certain other persons, testified at the hearing. While the record does not clearly so indicate, the appellees assert, and Liotta does not deny, that Liotta was free to call additional witnesses. Following the hearing, the council by a four to three vote dismissed Liotta as administrator.[1]

Liotta subsequently brought this action under 42 U.S.C. § 1983. He charged that the appellees in terminating his employment denied him due process of law because the "sole ground for the discharge ... was ... that [his] political beliefs differed from those of the ruling majority of the Borough Council." He further asserted that the charges leveled against him were simply "a pretext to his firing because of his political beliefs." He claimed that the appellees violated his constitutional rights by meeting "on the status" of his position without notifying him and by dis-

---

* Honorable Donald W. VanArtsdalen, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

1. Criminal charges were filed against Liotta, but he was acquitted at a jury trial.

charging him at the March 30, 1989 meeting with the intent to deprive him of equal protection under the law.

The appellees moved for summary judgment. In its memorandum opinion the district court, citing *Mt. Healthy City School Dist. Bd. of Educ. v. Boyle,* 429 U.S. 274, 283, 97 S.Ct. 568, 574, 50 L.Ed.2d 471 (1977), indicated that a plaintiff need not establish a property interest to assert a claim under the First Amendment. But it then wrote, again citing *Mt. Healthy v. Boyle,* that a plaintiff in a case charging that he was dismissed for political reasons, must show that his constitutionally protected political views were a substantial or motivating factor in his dismissal. The district court then indicated that the appellees said they discharged Liotta because they suspected him of being responsible for the missing cash. The court said that while Liotta presented affidavits from three council members claiming that Liotta was terminated for political reasons, these assertions "are nothing more than conclusory statements." The court then found that Liotta failed to raise a genuine issue of material fact to refute the appellees' contention that they terminated Liotta because of the thefts. Finally, the court held that Liotta had not established the predicate for a Fourteenth Amendment equal protection or due process claim because under state law he could be removed from his position at any time, regardless of the four-year term provided in the borough's resolution.

This appeal followed. The district court had jurisdiction under 28 U.S.C. §§ 1331 and 1343, and we have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review and thus determine whether there is a dispute as to any material fact and whether the appellees were entitled to judgment on the basis of the undisputed facts as a matter of law. *Gray v. York Newspapers, Inc.,* 957 F.2d 1070, 1078 (3d Cir.1992).

## II. DISCUSSION

■ Some First Amendment discharge cases may be characterized as involving speech as such. *See, e.g., Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Sanguigni v. Pittsburgh Bd. of Public Ed.,* 968 F.2d 393, 396–400 (3d Cir.1992). But this is not such a case. Rather, Liotta urges that he was fired for political reasons. Thus, he seeks to bring this case within a First Amendment framework recognized in *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), and applied by this court in *Brown v. Trench,* 787 F.2d 167 (3d Cir.1986), both of which he cites. *See also Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *Burns v. County of Cambria,* 971 F.2d 1015 (3d Cir.1992), *cert. denied,* — U.S. ——, 113 S.Ct. 1049, 122 L.Ed.2d 357 (1993); *Zold v. Township of Mantua,* 935 F.2d 633 (3d Cir.1991). An employee's interests protected under *Elrod v. Burns* are the right to freedom in his political beliefs and associations and the separate but related right to be free from the imposition of an unconstitutional condition on the receipt of a public benefit. 427 U.S. at 355–59, 96 S.Ct. at 2680–82; *see also Branti v. Finkel,* 445 U.S. at 513–14, 100 S.Ct. at 1292–93.

But this case differs from *Elrod v. Burns* and *Brown v. Trench* in a fundamental way for, unlike the plaintiffs in those cases, Liotta does not attribute his discharge to political reasons stemming from a change in governmental power from one party to another. Instead, Liotta supports his claim of political retaliation with the affidavits of three council members, the full text of two of which are, "I firmly believe that Joseph Liotta, Jr. was suspended and later terminated from his job as Springdale Borough Administrator due to political reasons" and "I believe that Joe Liotta, Jr. was terminated due to political reasons." The third affidavit, which we also quote in full, is more extensive:

> I wish to confirm in writing my belief as to the reason for your recent dismissal as Borough Administrator for the Borough of Springdale.
>
> The action of Borough Council in dismissing you was nothing more than the culmination of several politicians' 2 year effort to ruin your name and good reputation. There is no doubt whatsoever in

my mind that you performed your duties in accordance with your directive from Council. Your dismissal was a completely political action.

As a member of Borough Council for the past three and one-half years, I believe that I am qualified to judge your performance. Your tenure was always satisfactory. On behalf of the community I apologize for the actions of a few individuals who have their own devious motives at heart instead of the good of the Borough.

If I can be of service to you at any time[,] please feel free to call upon me.

But, as the district court noted, these affidavits are conclusory. Two simply say that in the deponents' opinions, Liotta was fired for political reasons. The third, though more extensive, makes no reference to the events of March 15, 1989, and instead refers to Liotta's prior creditable service and to the attempt of certain unidentified "politicians" to ruin Liotta's name and good reputation. These affidavits are inadequate to defeat the appellees' motion for summary judgment. Certainly if First Amendment protections against terminations for political reasons are to be extended beyond the clearly delineated situations in which employees claim they were discharged by reason of a change in the party controlling the government office with the power of appointment and discharge, a point which we do not decide, an employee's case must be based on more than speculation. Otherwise, there is a danger that disputes among public officials of every nature would be characterized as "political" in an attempt to bring the action within the First Amendment framework.

There is simply no support in the affidavits for a conclusion that Liotta's disputes involved his freedoms of belief and association, or the related right to be free from the imposition of an unconstitutional condition on the receipt of a public benefit, the interests implicated under *Elrod v. Burns.* Accordingly, the affidavits did not raise a material issue of fact so as to preclude the granting of summary judgment. They certainly do not tend to establish that Liotta was discharged by reason of "partisan political affiliation," the act interdicted for certain public employees in *Elrod v. Burns. See Burns v. County of Cambria,* 971 F.2d at 1021; *Zold v. Township of Mantua,* 935 F.2d at 635; *cf. Sanguigni v. Pittsburgh Bd. of Public Ed.,* 968 F.2d at 401 (holding plaintiff's property interest claim could not be based on a conclusory allegation citing past practices).

We recognize that Liotta testified in a deposition that he had political problems within the Democratic Party and we are aware that the individual appellees were elected as Democrats. Thus, Liotta indicated in his deposition that appellee Sosovicka "maligned" him by calling him a "Republican," evidently a pejorative word in Liotta's view. But nothing in the record supports a conclusion that these problems led to the council's vote to terminate his employment. The mere existence of these problems which, according to his deposition, predated his appointment as borough administrator, cannot justify an inference that the problems, rather than the suspicious circumstances surrounding his conduct on March 15, 1989, were the actual reason for his discharge. Thus, even if *Elrod v. Burns* can be read broadly so that discharges of certain employees attributable to intra-party strife can infringe the employees' First Amendment rights, the district court nevertheless appropriately entered summary judgment in this case.

■ Liotta's second contention, that the appellees violated his due process and equal protection rights under the Fourteenth Amendment, requires little discussion. To start with, he does not explain how the appellees' actions in terminating his employment possibly could have infringed his equal protection rights and thus, as we see no basis for the claim, we will not discuss it further.

It appears, however, that the district court's reasoning that Liotta's due process rights were not violated is somewhat incomplete, for the court based its opinion on its conclusion that Liotta did not have a property interest in the position of borough administrator. While this may be so, we

think Liotta could make a substantial argument that in view of the allegations against him, he had a liberty interest protected under the Fourteenth Amendment. *See Board of Regents v. Roth*, 408 U.S. 564, 573–75, 92 S.Ct. 2701, 2707–08, 33 L.Ed.2d 548 (1972); *Unger v. National Residents Matching Program*, 928 F.2d 1392, 1396 (3d Cir.1991). We add, however, in fairness to the district court, that Liotta does not contend that he has a liberty interest and, indeed, does not even distinguish between procedural and substantive due process, though obviously we are concerned with the former, as there could not possibly be substantive due process protection against the termination in the circumstances of this case. *See Midnight Sessions, Ltd. v. City of Philadelphia*, 945 F.2d 667, 684 (3d Cir.1991) (holding substantive due process not violated when licensing decisions are based on scheme rationally related to a governmental interest), *cert. denied*, — U.S. ——, 112 S.Ct. 1668, 118 L.Ed.2d 389 (1992).

But even if Liotta had a liberty or property interest protected by the Fourteenth Amendment, the district court reached the correct result because Liotta presents no facts to support a conclusion that the hearing he received on March 30, 1989, did not afford him notice and the opportunity to respond to the allegations against him. *See Gniotek v. City of Philadelphia*, 808 F.2d 241, 244 (3d Cir.1986), *cert. denied*, 481 U.S. 1050, 107 S.Ct. 2183, 95 L.Ed.2d 839 (1987). Indeed, it is undisputed that the borough council conducted an evidentiary hearing at which witnesses, including Liotta himself, testified. Liotta does not explain why this hearing did not afford him the process he was due.

In view of the aforesaid, we will affirm the order of June 30, 1992.