**Kraig GRAHAM**

v.

**CITY OF PHILADELPHIA, Appellant.**

No. 03–3372.

United States Court of Appeals, Third Circuit.

Argued Sept. 15, 2004.

March 25, 2005.

---

Elise M. Bruhl (Argued), City of Philadelphia, Law Department, One Parkway, Philadelphia, PA, for Appellant.

Tshaka H. Lafayette (Argued), Lafayette & Associates, Philadelphia, PA, for Appellee.

Before ALITO, AMBRO, and FISHER, Circuit Judges.

## OPINION OF THE COURT

FISHER, Circuit Judge.

This appeal presents the issue of whether a public employee terminated from employment because of an arrest, and then acquitted of the charges leading to that arrest in a criminal trial, is entitled to a name-clearing hearing as the remedy for a governmental entity's deprivation of the employee's due process liberty interest. The District Court concluded that criminal trials and name-clearing hearings are distinct and therefore the former do not obviate the need for the latter. We conclude, however, that Graham's criminal trial provided him ample opportunity to take and present evidence supporting his innocence, and thereby jettisoned any due process obligation to grant him a name-clearing hearing. Accordingly, we will reverse the judgment of the District Court.

## I.

Plaintiff–Appellee Kraig Graham ("Graham") was hired as a probationary police officer in the Philadelphia Police Department ("PPD") on August 21, 2000. On November 1, 2001, an individual walked into the PPD's 17th District office and informed one of the officers that there was a PPD police officer who was "having sex with a thirteen year old girl." Officers from the PPD's Special Victims Unit and Internal Affairs Division ("IAD") investigated the report and forwarded the evidence they compiled to the Philadelphia District Attorney. After reviewing this evidence, the District Attorney requested an affidavit for Graham's arrest and a bail commissioner subsequently issued an arrest warrant for Graham.

On December 3, 2001, Graham was arrested inside the IAD's office and charged with statutory sexual assault (a second degree felony) and corrupting the morals of a minor (a first degree misdemeanor) under Pennsylvania law. At the time of his arrest, Graham was informed of his *Miranda* rights and had an opportunity to confer with his lawyer and union representative, but declined an opportunity to respond to the charges against him. The PPD terminated Graham's employment upon his arrest pursuant to its policy of terminating any officer arrested for a crime.

Graham received a preliminary hearing on March 8, 2002, after which his case proceeded to trial. On June 14, 2002, following a criminal trial, a jury acquitted Graham of the charges. Graham then sought reinstatement as a police officer with the PPD. The PPD refused to reinstate Graham pursuant to its policy of not reinstating any officer terminated because of an arrest, even where that officer is acquitted at trial. Graham also requested that the PPD provide him a so-called "name-clearing hearing" at which he could present evidence of his innocence of the crimes with which he had been charged. The PPD denied this request.

## II.

On October 9, 2002, following the PPD's refusal to reinstate him and grant

him a name-clearing hearing, Graham filed a complaint in the United States District Court for the Eastern District of Pennsylvania, naming as defendants John Cerrone and Sylvester Johnson,[1] and alleging a violation of his Fourteenth Amendment due process liberty interest in reputation. Defendants filed a motion to dismiss on November 26, 2002, arguing that Graham failed to demonstrate a cognizable interest sufficient to support his due process claim. The District Court denied the motion on grounds that the loss of even at-will government employment can satisfy the so-called "plus" element of a "stigma plus" liberty interest claim.[2] 249 F.Supp.2d 563 (E.D.Pa.2003).

On April 22, 2003, Graham filed a motion for leave to file an amended complaint. He then filed an amended complaint, voluntarily dismissing defendants Johnson and Cerrone, and substituting the City as the sole defendant. Graham averred that the City had abridged his due process liberty interest in reputation by "not providing hi[m] with proper notice of, and an opportunity to refute, baseless criminal charges lodged against him prior to his termination[.]" Graham further alleged that the City committed due process viola-

tions by refusing to reinstate him or provide him with a name-clearing hearing. He alleged that these violations stigmatized him and inhibited him from securing future employment as a law enforcement officer.

Following discovery, Graham filed a motion for summary judgment. In his supporting memorandum, Graham stated that his "reputation has been impugned in his community following his arrest and some people view him as a 'pervert' and a 'public enemy.'" Graham cited numerous decisions from the courts of appeals for the legal proposition key to his position: that "an actionable deprivation of a liberty interest in one's reputation may occur where government terminates or refuses to rehire an employee amidst stigmatizing public allegations of dishonesty, immorality, illegality or other charge that might seriously damage his standing and associations in the community." He then enumerated what he considered to be "undisputed" facts and asked the District Court to grant him summary judgment and "order Defendant to provide [him] with a name-clearing hearing." Graham also appeared to suggest that a name-clearing hearing might

---

1. Johnson was the PPD's Commissioner at the time Graham was acquitted and sought reinstatement and a name-clearing hearing. Cerrone was Captain of the 12th District of the PPD, the District to which Graham was assigned at the time of the alleged crimes.

2. "Stigma plus" refers to the showing a plaintiff must make in order to recover on a claim for a violation of a liberty interest in reputation under the Due Process Clause. As we have stated, such "a plaintiff must show a stigma to his reputation plus some concomitant infringement of a protected right or interest." *Ersek v. Twp. of Springfield*, 102 F.3d 79, 83 n. 5 (3d Cir.1996) (citing *Paul v. Davis*, 424 U.S. 693, 701, 709, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976)). As here, the "plus" is generally termination of employment. Because of his probationary status, Graham was

an at-will employee. We assume without deciding that loss of at-will employment satisfies the "plus" requirement, but note, as we did in *Ersek,* that we have not yet decided this issue. *See id.* (noting that "[l]anguage in *Clark* [*v. Township of Falls,* 890 F.2d 611 (3d Cir. 1989) ]"—requiring a showing of "a change or extinguishment of a right or status guaranteed by state law or the Constitution" in order to meet the "plus" prong, *Clark,* 890 F.2d at 619—"may be read broadly to hold that the 'plus' must be a protectible property interest."). *But see Codd v. Velger,* 429 U.S. 624, 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977) (stating in dicta that a name-clearing "hearing [is] required where a *nontenured* employee has been stigmatized in the course of a decision to terminate his employment[.]") (emphasis supplied).

not be enough to compensate him for his reputational injury or, perhaps, that a remedy alternative to a name-clearing hearing would be appropriate.

On July 10, 2003, the District Court granted Graham's motion for summary judgment. The District Court agreed with Graham that four critically relevant facts were undisputed: (1) that the City terminated Graham's employment amidst charges of illegal and immoral conduct; (2) that the City made public statements about Graham's arrest and firing; (3) that Graham's reputation has been seriously damaged and employment opportunities have been foreclosed; and (4) that Graham contends that the charges against him, as to which he was acquitted by a jury, are false. 2003 WL 21949152, at *1 (E.D.Pa. July 9, 2003). The District Court concluded that Graham should prevail on his "stigma plus" claim because it had already found the "plus" element satisfied in this case in its order denying the original defendants' motion to dismiss, and there was "no dispute that [Graham] has suffered a stigma to his reputation," therefore establishing the "stigma" prong of the claim. *Id.* at *2.

The District Court then specifically considered whether a name-clearing hearing was the appropriate remedy for the City's due process violation. The Court devoted much of its discussion to our decision in *Ersek* and whether Graham's contentions involved a factual dispute that "has some significant bearing on the employee's reputation[.]" *Id.* (quoting *Ersek*, 102 F.3d at 84 (citation omitted)). The Court found the requisite factual dispute in Graham's contention that the charges against him

were false because he did not in fact commit the crimes. The Court summarily rejected the City's argument that Graham's criminal trial ending with an acquittal rendered any name-clearing hearing redundant. Relying on the Supreme Court's statement in *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984), that "an acquittal on criminal charges does not prove that the defendant is innocent; it merely proves the existence of a reasonable doubt as to his guilt[,]" 465 U.S. at 361, 104 S.Ct. 1099, the District Court found that "the purposes of a criminal trial and a name-clearing hearing are distinct, and the former cannot fairly be taken to obviate the need for the latter." 2003 WL 21949152, at *3. The Court therefore granted Graham's motion for summary judgment and ordered the parties to work out the procedures for a name-clearing hearing; beyond permitting Graham to file a motion for attorney's fees, the District Court granted him no additional relief.

The City filed a timely notice of appeal from the District Court's order granting summary judgment. Graham filed a cross-appeal on the District Court's decision to limit his remedy to a name-clearing hearing, but the cross-appeal was dismissed pursuant to Fed. R.App. P. 3(a) and 42(b). We therefore consider only the propriety of the District Court's order requiring the City to provide Graham a name-clearing hearing.[3]

## III.

The District Court properly exercised jurisdiction under 28 U.S.C. § 1331. We have appellate jurisdiction under 28 U.S.C.

---

**3.** We noted in *Ersek* that it "is unclear whether a plaintiff would be entitled to damages in addition to or in lieu of a hearing[,]" but implied that damages might be available because a name-clearing hearing might not always "cure all the harm caused by stigmatizing government comments." *Ersek*, 102 F.3d at 84 n. 6. Because Graham's cross-appeal was dismissed, we need not address that unresolved issue here.

§ 1291. We apply plenary review to a District Court's grant of summary judgment. *Morton Int'l, Inc. v. A.E. Staley Mfg. Co.*, 343 F.3d 669, 679 (3d Cir.2003).

As discussed above, Graham claims that the City has deprived him of the liberty interest in his reputation in violation of the Due Process Clause. We made clear in *Ersek* that "[t]he principal relief to which an individual is entitled should the government's stigmatizing comments rise to the level of a due process violation is a hearing to clear his name." *Ersek*, 102 F.3d at 84 (citations omitted). *See also Patterson v. City of Utica*, 370 F.3d 322, 335 (2d Cir. 2004) ("The appropriate remedy for a stigma-plus claim premised on a plaintiff's termination from at-will government employment is a post-deprivation name-clearing hearing."). Although the City makes several arguments in support of reversal, we choose to resolve this case on the ground that Graham's criminal trial negates his entitlement to a name-clearing hearing because that trial satisfied the requirements of the Due Process Clause.

We have found name-clearing hearings obviated by prior hearings before. In *Liotta v. Borough of Springdale*, 985 F.2d 119 (3d Cir.1993), Liotta, a borough administrator, was accused of stealing borough funds. The borough council held a hearing to determine whether to discipline him. Liotta, a council member and the borough secretary (who had informed council of cash shortages from the borough's funds) testified at the hearing. We assumed that Liotta was free to call any additional witnesses had he so chosen. Following the hearing, council voted to terminate Liotta's employment.

Liotta subsequently brought an action against the council members and the borough itself, including a claim that his discharge deprived him of his protected interests under the Due Process Clause. We discussed whether Liotta had alleged the existence of a protected due process interest.[4] But we ultimately rejected Liotta's due process claim because the hearing he received "afford[ed] him notice and the opportunity to respond to the allegations against him." *Id.* at 123 (citation omitted). We found that it was "undisputed that the borough council conducted an evidentiary hearing at which witnesses, including Liotta himself, testified[,]" and noted that Liotta had failed to "explain why this hearing did not afford him the process he was due." *Id.*

As we did in *Liotta*, we find that Graham's "prior hearing," his criminal trial, satisfied the City's due process obligations and obviated any need for a name-clearing hearing. As discussed above, the District Court summarily disposed of the City's argument in this regard, relying solely on the United States Supreme Court's comment in *One Assortment of 89 Firearms* that "an acquittal on criminal charges does not prove that the defendant is innocent; it merely proves the existence of a reasonable doubt as to his guilt." 465 U.S. at 361, 104 S.Ct. 1099.[5] Relying on

---

**4.** Like Graham, Liotta had no due process property interest in his employment, and therefore had, at most, a due process liberty interest claim in connection with his termination. *See Liotta*, 985 F.2d at 123.

**5.** This statement by the Court in *One Assortment of 89 Firearms* came in a context distinct from the one at issue here. There, the Court considered "whether a gun owner's acquittal on criminal charges involving firearms precludes a subsequent *in rem* forfeiture proceeding against those same firearms." 465 U.S. at 355, 104 S.Ct. 1099. The Court's comment about acquittals was in reference to the defendant's contention that his prior acquittal on the firearms charges collaterally estopped the government from prevailing in the subsequent forfeiture proceeding. Whether an acquittal following a criminal trial has collateral estop-

this statement, the District Court concluded that the purposes of criminal trials and name-clearing hearings differ, and therefore the occurrence of the former does not obviate the need for the latter.

The key premise in the District Court's reasoning appears to be that a name-clearing hearing must provide one with the opportunity to prove actual innocence of the alleged criminal conduct. If this premise is legally sound, it would be difficult to dispute the District Court's conclusion, because an acquittal (i.e., not guilty beyond a reasonable doubt) following a criminal trial is not *ipso facto* a finding of actual innocence. But does the Due Process Clause require that one claiming reputational injury caused by an arrest and criminal charges be given an opportunity to prove actual innocence of the crimes charged?

 Whether a criminal trial resulting in an acquittal obviates a subsequent name-clearing hearing requires us to consider the demands of the Due Process Clause.[6] The Supreme Court "consistently has held that 'some kind of hearing is required at some time before a person is finally deprived of his property interests.'" *Memphis Light, Gas and Water Division v. Craft,* 436 U.S. 1, 16, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978) (quoting *Wolff v. McDonnell,* 418 U.S. 539, 557–558, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)). "'[A] hearing, in its very essence, demands that he who is entitled to it shall have the right to support his allegations by argument, however brief; and, if need be, by proof, however informal.'" *Craft,* 436 U.S. at 16 n. 17, 98 S.Ct. 1554 (quoting *Londoner v. Denver,* 210 U.S. 373, 386, 28 S.Ct. 708, 52 L.Ed. 1103 (1908) (citations omitted)).

 "The procedural protections required by the Due Process Clause are determined with reference to the particular rights and interests at stake in a case." *Reynolds v. Wagner,* 128 F.3d 166, 179 (3d Cir.1997) (citing *Washington v. Harper,* 494 U.S. 210, 229, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990)). In *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the Supreme Court explained that "identification of the specific

---

pel impact on a subsequent civil proceeding differs markedly from whether it satisfies the dictates of the Due Process Clause in the context of a reputational injury claim. Collateral estoppel requires identity between the issue in the prior and instant proceeding, that the issue have been actually litigated and necessary to the decision in the prior proceeding, and that the party sought to be precluded from relitigating the issue had been fully represented in the prior proceeding. *See Henglein v. Colt Industries Operating Corp.,* 260 F.3d 201, 209 (3d Cir.2001) (citations omitted). As we explain below, however, whether a prior proceeding satisfies the Due Process Clause's name-clearing hearing requirement turns generally on whether the party seeking the hearing had notice and an opportunity to be heard at the prior proceeding. We therefore are not bound by the comment of the Court in *One Assortment of 89 Firearms.*

6. At least one district court squarely has addressed the issue before us and found that a criminal trial obviates the need for a subsequent name-clearing hearing. *See Seeley v. Board of County Commissioners for La Plata County, Colorado,* 654 F.Supp. 1309 (D.Colo. 1987). In *Seeley,* plaintiff, a deputy county sheriff, was charged with assaulting a prison inmate; on the same day the charges were filed, he was suspended without pay. He was later terminated following a judge's finding that probable cause supported trying him for the assault, but was acquitted following a jury trial. He instituted a due process liberty interest claim against the sheriff's department, claiming an inability to secure law enforcement employment due to his termination. The district court granted the department's motion for summary judgment, concluding that Seeley's criminal jury trial "constituted [the due process] opportunity" ... to "'clear his name' publicly[.]" 654 F.Supp. at 1312 (citation omitted).

dictates of due process generally requires consideration of three distinct factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

424 U.S. at 335, 96 S.Ct. 893 (citation omitted). A court must balance these factors to determine what type of procedures would assure fairness in a particular case. *Id.* at 347–49, 96 S.Ct. 893.

We thus begin our *Mathews* analysis with the nature of Graham's interest here. Graham's interests are genuine and weighty. He has an interest in removing any tarnish to his reputation caused by his arrest, the criminal charges which led to the arrest, and the events that flowed from the arrest and charges. In so doing, he seeks, among other things, to improve his prospects of securing future employment as a law enforcement officer.

In examining the second prong of *Mathews,* we must consider whether the criminal trial Graham received adequately protected his due process liberty interest in his reputation so that the government's failure to provide him with a separate name-clearing hearing created little to no risk of erroneous deprivation of his rights. Graham nowhere suggests that his criminal trial was unfair or in any way suppressed his ability to refute the allegations against him. Indeed, as the Seventh Circuit observed in *Greene v. Finley,* 749 F.2d 467, 472 (7th Cir.1984), a "criminal trial

with its stringent procedural safeguards and difficult burden of proof afforded plaintiff more 'process' than he ever could have expected to receive at an administrative hearing ... under the ... *Mathews* standard." 749 F.2d at 470. Nor does Graham suggest that he might offer at a name-clearing hearing new evidence or evidence not presented at trial supporting his actual innocence. *See id.* at 472 ("Ordering defendants to grant plaintiff a hearing so that plaintiff could present the same evidence that was litigated at trial would serve no useful purpose and does not in our view constitute process to which the plaintiff is entitled."). As such, Graham's trial substantially vindicated his reputational interest, and significantly reduced the prospect that he would be erroneously deprived of that interest.

The second *Mathews* factor also directs consideration of the "probable value" of any additional safeguards beyond the criminal trial itself. Requiring a name-clearing hearing after a criminal trial resulting in an acquittal would add little value at best—indeed, as the Second Circuit has put it, a name-clearing hearing under these circumstances "would hardly [be] an unmixed blessing." *See Baden v. Koch,* 799 F.2d 825, 832 (2d Cir.1986). On the one hand, Graham would be permitted to put on evidence aimed at proving, perhaps by a preponderance of the evidence,[7] that he is actually innocent of the crimes with which he was charged. But the mere occurrence of a name-clearing hearing would only subject Graham to further public scrutiny. And the City would have the opportunity to challenge Graham's evidence and cast greater doubt on Graham's

---

7. We have never detailed the procedures, burdens and standards of proof applicable in a

name-clearing hearing.

innocence than now exists following his acquittal.

The final *Mathews* element directs us to examine the government's interest. The government's interest here is two-fold. The government has a strong interest in preserving its officials' ability to make personnel decisions and communicate the reasons for those decisions to the public, particularly where, as here, the decisions implicate matters of heightened public concern such as alleged sexual assault of a minor by a police officer. *See Patterson,* 370 F.3d at 336 (noting that the "state interest at issue in a stigma-plus claim has been defined as the interest of an executive officer to make and explain important personnel decisions.") (citation omitted). The government also has an interest in conserving public resources, and requiring a name-clearing hearing under these circumstances would tend to undermine that interest.

Balancing these interests and factors leads us to conclude that Graham's criminal trial constitutes ample "process" obviating his claim for a name-clearing hearing. There is no doubt that Graham has a genuine interest in his reputation and livelihood. But he has not been denied an opportunity to protect his reputation—his criminal trial provided him with more than adequate opportunity to refute the allegations asserted against him. And the governmental interests in making personnel decisions in the public interest, communicating those decisions to the public, and conserving public resources, are substantial.

We therefore hold that where, as here, following a criminal trial, an individual acquitted at trial advances a stigma-plus claim alleging reputational injury flowing from his or her alleged criminal conduct, that individual is not entitled to a name-clearing hearing under the Due Process Clause. Accordingly, we will reverse the judgment of the District Court.